UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Stephanie S. Chiafos,

        Plaintiff,

        v.

Restaurant Depot, LLC d/b/a Restaurant
Depot, Restaurant Depot Enterprises, LLC,
Jetro Cash & Carry Enterprises LLC, Jetro
Holdings, LLC,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 09-0499 ADM/AJB

_____

Pamela M. Spera, Esq., Eden Prairie, MN, on behalf of Plaintiff.

Kurt J. Erickson, Esq., and Katherine C. Bischoff, Esq., Jackson Lewis LLP, Minneapolis, MN, on behalf of Defendants.

_____

## I. INTRODUCTION

On July 24, 2009, the undersigned United States District Judge heard oral argument on Defendants Restaurant Depot, LLC d/b/a Restaurant Depot, Restaurant Depot Enterprises, LLC, Jetro Cash & Carry Enterprises LLC, and Jetro Holdings, LLC's (collectively "Defendants") Motion for Dismissal, Judgment on the Pleadings, Alternatively for Summary Judgment and Stay of Proceedings to Compel Arbitration [Docket No. 8]. Plaintiff Stephanie S. Chiafos ("Chiafos") asserts claims for alleged violations of Title VII of the Civil Rights Act of 1964, as amended; the Minnesota Human Rights Act, Minn. Stat. § 363A.01-.41; negligent retention; and negligent supervision. Compl. [Docket No. 1] at 1. For the reasons set forth below, Defendants' Motion is granted.

## II. BACKGROUND

Chiafos was employed for approximately nine months as an inventory stock-taker by Defendants at their St. Paul facility. Compl. ¶ 6. Chiafos alleges that her supervisor, John Ruhulessin sexually harassed her beginning soon after her employment began through November 2006. Compl. ¶ 7. Chiafos further alleges that she was sexually harassed by another supervisor, Tommye Brown from October through December 2006. Compl. ¶ 16. On July 20, 2007, Chiafos filed a Charge of Discrimination with the Minnesota Department of Human Rights ("MDHR") which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Compl. ¶ 33. The MDHR dismissed Chiafos's charge and on appeal affirmed its dismissal. Compl. ¶ 34, 36. On reviewing the MDHR's dismissal, the EEOC was unable to conclude that there was sufficient information to establish violations of the statutes. Compl. ¶ 38.

Prior to her first day of employment with Defendants, Chiafos attended an orientation session with a group of other recently-hired employees, during which she was asked to read and sign several documents. Chiafos Decl. [Docket No. 17] ¶¶ 2-3. Chiafos claims that (1) she was required to sign the documents before being allowed to start work; (2) she was not given the option of taking the documents home to read carefully; and (3) she was not given the option of declining to sign any of the documents. Id. ¶¶ 4-6.

One of the documents Chiafos signed at the orientation session on April 25, 2006 was Defendants' Arbitration Policy Acknowledgment (the "Acknowledgment"). Kipilman Decl. [Docket No. 12] Ex. B. The Acknowledgment reads:

> I acknowledge that I have received, read and agree to be legally
> bound by the Company's Arbitration Policy. I acknowledge that the

> Arbitration Policy is binding upon both the Company and me. I acknowledge that my promise to be bound by the Arbitration Policy is given in exchange for my employment or continued employment with the Company and, in addition thereto, for the Company's promise to be bound by the Arbitration Policy. I acknowledge that I shall not be bound by any modification of the Arbitration Policy unless and until such modification is communicated to me in writing and I continue in the Company's employ in acceptance of and exchange for such modification.

<u>Id.</u> Ex. C. The Arbitration Agreement (the "Agreement") provides that final and binding arbitration will be "the exclusive method for resolving disputes arising out of or relating to Employee's employment with the Company . . . ." <u>Id.</u> Ex. A (Agreement) at 1. The Agreement further provides:

> A dispute is within the scope of this agreement, and may be submitted to arbitration hereunder, if it arises out of or relates to the Employee's employment relationship with the Company and is otherwise eligible for arbitration as set forth herein. Examples of eligible disputes include without limitation those against the Company and/or any of its employees, agents or representatives, by or through the Employee that arise out of or relate to any oral or written contract, agreement, or understanding or are based in any common-law principle; including without limitation wrongful or retaliatory discharge; fraud; misrepresentation; defamation; negligent hiring; negligent retention; negligent infliction of emotional distress; and intentional infliction of emotional distress; and any federal, state or local statute or ordinance, with all amendments thereto, including without limitation, the Civil Rights Act of 1866, 1871, 1964 and 1991; the Age Discrimination Act of 1990; the Family Medical Leave Act of 1993; applicable state laws, including without limitation state laws against discrimination, conscientious employee protection acts, family and medical leave acts and similar law or ordinances of any other jurisdiction that may apply.
>
> No dispute shall be eligible for submission to arbitration under this policy where **one year** shall have elapsed from the occurrence of event giving rise to the dispute. Filing a claim within this period is a condition precedent to arbitration – the exclusive method for resolving disputes arising out of or relating to Employee's employment with the Company. The one-year period set forth herein

> is not in the nature of a statute of limitations, but a temporal limitation on the substantive scope of this agreement. The parties, however, may submit his, her or its written arbitration request to the AAA.
>
> Excluded from the scope of this agreement are claims arising from or related to the disclosure or threatened disclosure of the Company's trade secrets or confidential information, claims of Employee's unfair competition, and claims of Employee's breach of duty of loyalty or fiduciary duty including but not limited to theft of corporate assets.

Id. The Agreement also contains a waiver clause, providing that:

> The parties agree that, with respect to any dispute, the failure to request arbitration within the time and according to the procedures set forth herein shall operate as a waiver and general release in favor of the defending party or parties of any other forum [sic] any and all claims arising out of such dispute.

Id. Finally, the Agreement contains a Costs of Arbitration clause, which provides:

> The Company will pay one hundred percent (100%) of all costs peculiar to arbitration, including without limitation AAA administrative fees, arbitrator compensation and expenses, and cost of witnesses called by the arbitrator ("Arbitration Costs"). Upon the conclusion of the arbitration hearing and based upon the evidence presented during the hearing, the arbitrator shall determine and include in the final award an order that the employee reimburse the Company for up to 50% of the Arbitration Costs. In no event shall the employee be required to reimburse the Company prohibited costs that would effectively deny him or her a forum to vindicate his or her rights, except to the extent set forth above and unless otherwise ordered by the Arbitrator under applicable law, each party shall bear his, her or its own expenses, such as attorney's fees, costs, and expert witness fees.

Id. at 2.

Because Chiafos did not timely demand arbitration of her claims pursuant to the Agreement, Defendants contend her claims are barred. Defs.' Mem. in Supp. of Mot. [Docket No. 10] at 9-10. Defendants argue that Chiafos's sole forum was to arbitrate her claims and that

4

she was required to do so within one year of the events giving rise to her claims. Id. at 10. It is undisputed that Chiafos did not file for arbitration within one year, and, therefore, Defendants seek dismissal with prejudice or, in the alternative, for an order to compel arbitration of the claims. Id. at 13. Defendants further argue that if the Court retains jurisdiction of the claims, Chiafos's negligent supervision and retention claims are preempted by Minn. Stat. § 363A.04 because the duties she claims are breached were established by the statute. Id. at 11-12.

### III. DISCUSSION

**A.     Arbitration**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, which governs arbitration agreements relating to transactions involving interstate commerce and provides:

> A . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA establishes a "federal policy favoring arbitration" and requires courts to "rigorously enforce agreements to arbitrate." Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987). If a court finds that an issue before it is arbitrable under a written agreement, it must, at the request of either party, stay the judicial proceedings until arbitration has been conducted. 9 U.S.C. § 3. The Court employs a two-part test to analyze claims implicating the FAA. Pro Tech Indus., Inc. v. URS Corp., 377 F.3d 868, 871 (8th Cir. 2004). The Court must determine (1) whether a valid agreement to arbitrate exists between the parties and (2) whether the dispute is within the scope of that agreement. Id. Where, as here, the parties

5

dispute whether an individual has waived her right to a judicial forum in which to vindicate her statutory rights, the Court must first determine whether that threshold issue should be decided by a judge or arbitrator. Id. at 871-72. Chiafos argues that no valid agreement exists because she was induced by fraudulent representation, and the Agreement lacked consideration and is unconscionable. Defendants argue that the applicability of the one-year time in the Agreement should be decided by the Court, not an arbitrator, and that the Court should dismiss the claim because Chiafos failed to seek arbitration within the prescribed one-year time period.

1.   **Validity of the Arbitration Agreement**

Chiafos argues that the arbitration agreement is invalid and void because it was induced by fraud, lacks consideration, and is an unconscionable contract of adhesion. Plaintiff's Opp'n Mem. [Docket No. 17] at 12-23. The basis for her argument is that the arbitration agreement encompasses all possible claims that the employee may bring against the employer, but excludes several claims that the employer may bring against the employee. Chiafos argues that the agreement was fraudulently induced because it gave her a "false sense of fairness and evenhandedness" which lead her to feel "comfortable signing the agreement." Id. at 14. Chiafos further claims that the agreement is invalid for lack of consideration because the Defendants were not really bound by the agreement and because of the disparity in bargaining power between the parties. Lastly, she argues that, because it only requires employees and not employers to arbitrate all claims, the agreement was "so one-sided and inherently unfair as to be unconscionable." Id. at 18.

While "the FAA governs the enforcement of arbitration provisions in all contracts involving interstate commerce, a state may regulate contracts, including arbitration clauses,

under general contract principles and may invalidate an arbitration clause on grounds such as fraud, duress, or unconscionability." Alexander v. Minnesota Vikings Football Club, LLC, 649 N.W.2d 464, 467 (Minn. Ct. App. 2002) (citing Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996)). Accordingly, Chiafos's enforceability arguments are analyzed under Minnesota law.

To prove that she was fraudulently induced to enter the employment agreement, Chiafos must show:

> (1) there was a representation; (2) the representation was false; (3) the representation had to do with a past or present fact; (4) the fact was material; (5) the fact was susceptible of knowledge; (6) the representor knew the fact to be false, or, in the alternative, asserted it as his or her own knowledge without knowing whether it was true or false; (7) the representor intended to have the other person induced to act or justified in acting upon it; (8) the person was so induced to act or so justified in acting; (9) that person's action was in reliance upon the representation; (10) that person suffered damage; and (11) the damage was attributable to the misrepresentation.

Hanks v. Hubbard Broadcasting, Inc., 493 N.W.2d 302, 308 (Minn. Ct. App. 1992) (quoting Weise v. Red Owl Stores, Inc., 175 N.W.2d 184, 187 (Minn. 1970)). Chiafos argues the representation to employees that both the employer and the employees would be bound to the arbitration policy was false because the Agreement excluded many of the types of claims likely to be brought by the employer against an employee. This alleged representation does not constitute actionable fraud. The contract includes a paragraph specifically identifying claims that would not be subject to arbitration. Agreement at 1. Thus, there was no false representation and no fraud.

Chiafos next argues that the agreement lacks consideration. She contends that she was

7

hired five days prior to signing the arbitration agreement[1] and that the requirement that she sign the agreement as a condition of her continued employment was unfairly coercive. The Minnesota Supreme Court has found that "[m]ere continuation of employment as consideration [can] be used to uphold coercive agreements." Davies & Davies Agency, Inc. v. Davies, 298 N.W.2d 127, 130 (Minn. 1980). While some courts have required independent consideration when an employer includes a non-compete agreement as a condition of continued employment, National Recruiters, Inc. v. Cashman, 323 N.W.2d 736, 741 (Minn. 1982), or a change of status to an at-will employee, Jackson v. Navitaie, Inc., No. 04-1557, 2005 WL 61490, *3 (D. Minn. Jan. 11, 2005), no Minnesota case has been cited as authority that an agreement to arbitrate as a condition of continued employment is invalid for lack of consideration.

Finally, Chiafos argues that the contract is unconscionable. Under Minnesota law, a contract "is unconscionable if it is such as no man in his senses and not under delusion would make on one hand, and no honest and fair man would accept on the other." Overholt Crop Ins. Serv. Co., Inc. v. Bredeson, 437 N.W.2d 698, 702 (Minn. Ct. App. 1989) (internal quotations omitted). Chiafos has not identified a Minnesota case in which a court has found a similar arbitration agreement to be unconscionable. Instead, she broadly argues that the agreement is unfairly one-sided, she did not have time to consult with an attorney, and the language of the agreement was "ungrammatical" and lacked references to the terms "jury trial," "trial," or

---

[1] Chiafos contends that she was hired on April 20, 2006 when she filled out an employment application and had an interview. Chiafos Decl. ¶ 2. She was informed that she would be required to attend an Orientation session five days later before she would be allowed to start work. Id. She signed the Agreement during the Orientation session. Id. ¶ 3. Given the sequence of events, a question arises as to whether Chiafos's situation could even be described as "continued employment." Nevertheless, the Court will address Chiafos's argument that she was required to sign the Agreement as a condition of continued employment.

"court." To support her position, she relies on California case law. While Chiafos may have a stronger claim under the expansive definition of unconscionability found in California law, she has no support in the narrower definition of unconscionability found in Minnesota case law.

In determining whether an arbitration clause is an invalid contract of adhesion, a court should "examine the sophistication of the parties, the circumstances surrounding the execution of the agreement, and the burden arbitration places on the complaining party." Ottman v. Fadden, 575 N.W.2d 593, 597 (Minn. Ct. App. 1998). No one factor is dispositive, and courts determining unconscionablity weigh all of the factors. Id.; see also Lindsley v. DaimlerChrysler Fin. Servs. Am. LLC, No.08-1466, 2009 WL 383616 *2 (D. Minn. Feb. 11, 2009).

In support of the first two factors, Chiafos argues she has a high school education with one year of college, was not a sophisticated business person, did not have the opportunity to consult with counsel, and was given the agreement as part of several sets of documents she was required to sign before she could start her employment. Plaintiff's Opp'n Mem. at 21. The equities of the bargaining situation here are not strongly in Chiafos's favor, particularly given the fact that the arbitration provision does not place a substantial burden on Chiafos.

First, there is a strong federal policy supporting arbitration. E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 290 (2002). As such, arbitration is an appropriate forum in which to bring discrimination claims. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985). Accordingly, Chiafos has not lost any substantive rights by agreeing to arbitrate. Second, the arbitration agreement does not require any burdensome travel for Chiafos, which is, in fact, a more favorable term than in many arbitration agreements which have been upheld. See Seibert v. Amateur Athletic Union of U.S., Inc., 422 F. Supp. 2d 1033, 1044 (D.

9

Minn. 2006) (citing cases in which courts have found that forum selection clauses that require extensive travel are not unconscionable). Finally, the agreement is not cost prohibitive, a factor that, when present, has resulted in some courts finding an arbitration agreement unconscionable. See Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 90 (2000); see also Faber v. Menard, Inc., 367 F.3d 1048, 1053 (8th Cir. 2004). In this case, Defendant is responsible for 100% of the costs of arbitration subject to a 50% cost assessment at the Arbitrator's discretion. The terms of the Agreement do not place an unconscionable burden on Chiafos.

Chiafos's penultimate argument is that the Agreement is unconscionable because it is "ungrammatical" and did not contain references to the terms "jury trial," "trial," or "court." While the Sixth Circuit has upheld a district court's determination that an arbitration waiver provision was not clear because it did not include the terms "trial" or "jury," see Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370, 382 (6th Cir. 2005), there is no analogous case law in Minnesota. Thus, the Agreement was not unconscionable for failure to use these terms. In respect to the ungrammatical argument, the Court agrees with Chiafos that the waiver provision is poorly drafted. It provides:

> The parties agree that, with respect to any dispute, the failure to request arbitration within the time and according to the procedures set forth herein shall operate as a waiver and general release in favor of the defending party or parties of any other forum [sic] any and all claims arising out of such dispute.

Agreement at 1. However, the provision is not, as Chiafos suggests, "so general and vague in nature as to permit any kind of construction which [the employer] later sees fit to place upon it [that] could well lead to the unconscionable result of imposing upon an employee a restraint which he could not possibly have intended to assume when entering into the contract."

10

Combined Ins. Co. of America v. Bode, 77 N.W.2d 533, 539 (Minn. 1956). Chiafos has not articulated a plausible reading of the provision which would suggest an employee was not on notice that she had waived her right to a judicial forum.

In conclusion, the arbitration agreement was not procured by fraud, does not fail for lack of consideration, and is not unconscionable. Accordingly, the Court concludes that a valid arbitration agreement exists. The Court must next consider whether the applicability of the one-year limitation on claims is a matter for the Court or the arbitrator to decide.

### 2. Waiver of Title VII Rights

Defendants argue that Chiafos's claims are time-barred and that the time-bar issue is a substantive matter outside the scope of the arbitration agreement. The Agreement provides that final and binding arbitration is the exclusive method by which employees may resolve disputes with the company. See Agreement at 1. The Agreement also contains a waiver provision stating that "the failure to request arbitration within the time and according to the procedures set forth herein shall operate as a waiver and general release in favor of the defending party or parties of any other forum [sic] any and all claims arising out of such dispute." Id. Finally, the Agreement provides that:

> No dispute shall be eligible for submission to arbitration under this policy where **one year** shall have elapsed from the occurrence of event giving rise to the dispute. Filing a claim within this period is a condition precedent to arbitration – the exclusive method for resolving disputes arising out of or relating to Employee's employment with the Company. The one-year period set forth herein is not in the nature of a statute of limitations, but a temporal limitation on the substantive scope of this agreement. The parties, however, may submit his, her or its written arbitration request to the AAA.

Id.

As a general matter, statutory claims can be subject to arbitration agreements. Mitsubishi, 473 U.S. at 625 (finding "no warrant in the Arbitration Act for implying in every contract within its ken a presumption against arbitration of statutory claims"). In Mitsubishi, the Court noted that "[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Id. at 628. Participants to an arbitration agreement are generally held to that agreement unless they can show congressional intent "to preclude a waiver of judicial remedies for the statutory rights at issue." The Eighth Circuit has found that an employee is required to bring Title VII claims in an arbitral forum if she has agreed to an arbitration provision that covers such claims. See Richardson v. Sugg, 448 F.3d 1046, 1054-55 (8th Cir. 2006). The Richardson court found that the important factor was whether or not the plaintiff had any forum available in which to vindicate his rights. See id. Thus, even if an arbitration agreement bars a plaintiff from bringing his claim in a judicial forum, the civil rights statute would not be violated because the claim could be pursued in an arbitral forum. See id.

The parties disagree about whether the Court or the arbitrator should determine the issue of whether Chiafos's claims are time-barred. Chiafos argues that the issue of whether her claim is time-barred is a procedural issue appropriate for the arbitrator. The Defendants contend that the parties bargained for the time-bar issue to be a substantive one appropriately decided by the Court.

Typically, courts determine gateway matters of substantive arbitrability and refer gateway matters of procedural arbitrability to the arbitrator. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 (2002). In Howsam, the Court held that the question of whether a time

12

limit in an arbitration agreement barred the plaintiff's claim was a matter of procedural arbitrability to be decided by the arbitrator. See id. The Eighth Circuit has interpreted this rule to require a court, upon referring a gateway matter of arbitrability to the arbitrator, "to enter a stay thus retaining jurisdiction to ensure a forum for [plaintiff's] claims in the event the arbitrators hold a contractual or procedural limits bars arbitration." McNamara v. Yellow Transp., Inc., 570 F.3d 950, 957 (8th Cir. 2009). The Eighth Circuit has articulated concern over allowing plaintiffs to surrender civil rights by entering arbitration agreements. See id. Therefore, if a court finds that the arbitration agreement is valid, a stay is appropriate to retain jurisdiction to avoid stripping the plaintiff of any forum in which to vindicate her rights. The matter of waiver is then referred to the arbitrator.

Defendants acknowledge that time-bar issues are usually appropriately determined by an arbitrator, but they argue that in this case the parties bargained to have the time-bar issue decided by the Court. They cite language in Howsam in which the Court stated that "[in the absence of an agreement to the contrary, . . . issues of procedural arbitrability, . . . such as time limits . . . are for the arbitrators to decide." 537 U.S. at 85. Defendants contend that the sentence in the agreement that provides "[t]he one-year period set forth herein is not in the nature of a statute of limitations, but a temporal limitation on the substantive scope of this agreement," evinces the parties' agreement to convert what is normally a procedural issue into a substantive issue appropriately decided by the Court.

No cases decided after Howsam have been cited as precedent for when a time-bar issue has been decided as a substantive matter appropriate for the Court. Rather, courts regularly refer the question of a time limitation, whether styled as a statute of limitations or some other time

13

limit, to arbitrators. See McNamara, 570 F.3d at 957; see also Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 11 (1st Cir. 2005). And while Defendants claim that the quoted sentence in the agreement "makes it clear that the failure to demand arbitration *is a matter that is outside arbitration*," Defendants' Reply Mem. [Docket No. 18] at 2, the Court concludes the sentence evinces no such intent. The sentence is included within the paragraph that outlines the procedure for referring a claim to arbitration. It is followed by a sentence that provides that "[the parties, however, may submit his, her or its written arbitration request to the AAA." Agreement at 1-2. The one-year limitation is discussed only within the context of arbitration and nothing in this provision informs Chiafos that the time limitation was a matter outside of the Agreement. Moreover, the one-year period is referred to not as a substantive matter, but a "temporal limitation" falling well within the procedural framework appropriately decided by an arbitrator as suggested by Howsam. Finally, at best this language is ambiguous and ambiguous language in an agreement should be construed against the drafter—Defendants. Hilligoss v. Cargill, Inc. 649 N.W.2d 142, 148. (Minn. 2002). For these reasons, the Court concludes that applicability of the one-year limitations period to Chiafos's claims is a matter appropriately decided in the first instance by the arbitrator. Accordingly, the Motion to Compel Arbitration is granted, and this action is stayed pending the outcome of that proceeding. See McNamara, 570 F.3d at 957.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Restaurant Depot's Motion for Dismissal, Judgment on the Pleadings, Alternatively for Summary Judgment and Stay of Proceedings to Compel Arbitration [Docket No. 8 ] is **GRANTED**; and

2. The litigation is **STAYED** pending arbitration.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 28, 2009.